# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN SICHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 1825 |
| ) | |
| MERRILL LYNCH ) | Honorable Joan B. Gottschall |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Sicher brought this suit against his former employer, Merrill Lynch, alleging that Merrill Lynch violated the Age Discrimination in Employment Act ("ADEA") by rescinding a settlement offer after he provided information and an affidavit to a former co-worker's attorney in support of that co-worker's claims against Merrill Lynch. Merrill Lynch has moved for summary judgment.

### I. BACKGROUND[1]

Sicher began working for Merrill Lynch in 1996. In February 2007, Sicher became Director of Merrill Lynch's Wisconsin complex of offices. Sicher, however, was not eager to move to Wisconsin, so Robert Graham, Regional Director for Merrill Lynch's Midwest Region, appointed Sicher with the express understanding that Sicher would only remain in the position temporarily. Sicher recommended that Merrill Lynch hire Daniel Duhig as his replacement. Graham agreed and hired Duhig to be Sicher's successor.

---

[1] The parties are reminded that, per this court's standing order, no argument should be included in the Local Rule 56.1(a)(3) statement or the Local Rule 56.1(b)(3) statement. As noted this court's standing order, "argument masquerading as fact will not be considered by the court."

On September 20, 2007, Merrill Lynch terminated Sicher's employment after it came to light that Sicher had received pornographic emails at his work email account. Sicher was informed that he would not be paid severance or a prorated bonus. Sicher hired an attorney. On November 14, 2007, Sicher's attorney told Merrill Lynch that Sicher would be willing to sign a release and not arbitrate his discharge and defamation claims if Merrill Lynch would pay him his unvested equity and a partial bonus for 2007. In Merrill Lynch's estimation, Sicher's settlement demand was worth $365,819.81 and included 1,473 shares of stock. Around March 2008, Merrill Lynch made a counteroffer of $219,813.25, which did not include any value for unvested equity awards. Adam Greenfield, a Merrill Lynch attorney, told Sicher's attorney that Sicher should await the decision of a Merrill Lynch committee regarding the unvested equity awards. The parties agree that this was not the final or best offer from Merrill Lynch, and that the offer may have gone up with further negotiation.

After Sicher's termination, Merrill Lynch declined to install Duhig as Sicher's replacement, instead appointing a younger man, Chris Bettencourt, as Sicher's successor. Duhig claimed that Merrill Lynch discriminated against him because of his age. In June 2008, Sicher spoke with an attorney representing Duhig.

Meanwhile, Merrill Lynch had been working to resolve former employee Denise Golovin's claim that, beginning in March 2007, Sicher had sexually harassed her, causing her to quit her job. On July 17, 2008, Merrill Lynch settled Golovin's claims for a substantial sum.[2] Afterwards, Greenfield informed Tom Lydon, Merrill Lynch's Midwest Regional Business Director, that Merrill Lynch had to pay a significant amount of money to settle Golovin's claims.

---

[2] Sicher disputes that the sum was substantial, but fails to direct the court's attention to any evidence in the record to support his position. The court cannot credit unsupported factual assertions at the summary judgment stage.

2

Lydon and Greenfield noted that Sicher had yet to respond to Merrill Lynch's counteroffer, although months had passed.

Sometime before August 5, 2008, Duhig told his supervisor, Bettencourt (who reported to Graham), that he was going to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and that Sicher would be a witness in his case. On August 5, 2008, Duhig filed a charge of discrimination against Merrill Lynch with the EEOC. Also on August 5, 2008, Lydon directed Greenfield that, in light of the Golovin settlement and since Sicher had yet to respond to Merrill's counteroffer, Merrill Lynch should rescind Sicher's settlement offer. Later that day, Greenfield informed Sicher's attorney that Merrill Lynch was rescinding its counteroffer. On March 24, 2009, Sicher brought the instant suit, alleging that Merrill Lynch violated the ADEA by retaliating against him by rescinding its counteroffer because he assisted with Duhig's ADEA claims.

## II. LEGAL STANDARD

Rule 56 allows a movant to seek summary judgment when the opposing party's case consists of factually unsupported claims. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Simply put, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quotations omitted).

In order to survive a Rule 56 motion, the nonmoving party must either: (a) show that the movant cannot produce admissible evidence that a fact is not disputed, (b) show that the materials cited by the movant do not establish the absence or presence of a genuinely disputed

3

material fact, or (c) direct the court's attention to specific admissible evidence in "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that show that there is some genuinely disputed material fact. Fed. R. Civ. P. 56(c)(1); *see United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11 (7th Cir. 2010) ("[S]ummary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." Also, it is "not the district court's job to sift through the record and make [a party's] case for him") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In addition, "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (internal quotations and citations omitted); *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.") Furthermore, at the summary judgment stage, "the court views the record in

the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255, and *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009)).

### III. ANALYSIS

The ADEA provides, in pertinent part:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Of course, Sicher was no longer an employee by the time Merrill Lynch rescinded its settlement offer. Nevertheless, former employees can sue their former employers under the ADEA. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004) ("As we said in *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996), 'former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers.'" (citing *Veprinsky*, 87 F.3d at 891)). To make a prima facie case of retaliation in violation of the ADEA, Sicher must show that: (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between his protected activity and the adverse action. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Merrill Lynch argues that it is entitled to summary judgment because, *inter alia*, Merrill Lynch's withdrawal of a settlement offer does not constitute an adverse employment action. This court agrees. Since this issue is dispositive, the court will not address the parties' other arguments.

An employer's failure to grant an employee a discretionary benefit to which the employee is not automatically entitled is not an adverse employment action. *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004). In *Hottenroth*, Carol Hottenroth alleged that her employer retaliated against her in violation of Title VII of the Civil Rights Act of 1964 when the employer, among other things, failed to create a new position for her and declined to recommend her for certification as a journeyman-lineman. The Seventh Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of the employer.

The Seventh Circuit reasoned that "an adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled." *Id.* at 1033. The Seventh Circuit noted, "[W]e have repeatedly held that 'even the denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary.'" *Id.* at 1030 (quoting *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001)); *See Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) ("[L]oss of a bonus is not an adverse employment action in a case such as this where the employee is not automatically entitled to the bonus.") Indeed, "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Hottenroth*, 388 F.3d at 1029 & 1033 (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)); *cf. Hottenroth*, 388 F.3d at 1029 ("Some examples of an adverse employment action include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Thus, since Hottenroth failed to point to evidence that showed that she was

"entitled to have a new position created for her," her employer's failure to create such a position "cannot, as a matter of law, be considered an adverse action." *Hottenroth*, 388 F.3d at 1032-33. Furthermore, "[W]e refuse to conclude that the denial of a completely discretionary, merit-based recommendation constitutes an adverse employment action." *Id.* at 1030.

Payments offered to a former employee in exchange for a release of legal claims – whether the parties call the payment a severance or a settlement – are a discretionary benefit and do not constitute adverse employment action where those payments are not required by a contract.³ In *Equal Employment Opportunity Commission v. Sundance Rehab. Corp.*, 466 F.3d 490, 502 (6th Cir. 2006)⁴, the EEOC brought suit on behalf of a former employee who alleged that her former employer retaliated against her in violation of the ADEA and certain other civil rights statutes when the former employer declined to pay her severance when she refused to sign

---

³  The cases on which Sicher relies to rebut this point are inapposite. *See Flannery*, 354 F.3d 632 (involving a severance package that was promised to the employee before termination); *Jones v. Ryder Servs. Corp.*, No. 95 C 4763, 1997 WL 158329 (N.D. Ill. March 31, 1997) (not addressing whether an employer's withdrawal of a settlement offer was or was not adverse action). Sicher does cite to *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23 (D.C. Cir. 1997), in which the United States Court of Appeals for the District of Columbia Circuit held that an employer's withdrawal of a severance package offer was an adverse action. In reaching this conclusion, the D.C. Circuit reasoned that "An employer's withdrawal of a voluntary benefit . . . may constitute adverse action." *Id.* at 32. This premise directly conflicts with the Seventh Circuit's holding in *Hottenroth* that "[A]n adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled." *Hottenroth*, 388 F.3d at 1033. This court is required to follow Seventh Circuit precedent and thus is not at liberty to follow *Paquin*.

⁴  It is of no moment that the Sixth Circuit, in *Sundance*, declined to find the Seventh Circuit's opinion in *Equal Opportunity Emp't Comm'n v. Bd of Governors of State Colls. & Univs.*, 957 F.2d 424 (7th Cir. 1992), to be binding precedent. *Sundance*, 466 F.3d at 498. In *Bd. of Governors*, the Seventh Circuit held that an employer violated the anti-retaliation provision of the ADEA by having a policy of withdrawing an employee's contractual right to a grievance procedure if the employee chose to also pursue his/her claims in another forum, whether administrative or judicial. *Bd. of Governors*, 957 F.2d at 431. The Seventh Circuit reasoned that, even though the employer was not required to provide employees a grievance procedure, "'[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free . . . not to provide the benefit at all.'" *Id.* (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 75, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). The court in *Davis v. Precoat Metals*, 328 F. Supp. 2d 847 (N.D. Ill. 2004), distinguished *Bd. of Governors* as involving an employer who revoked an employee's contractual benefit because the employee exercised his rights under the ADEA. *Davis*, 328 F. Supp. 2d at 853. In contrast, *Precoat Metals* and Sicher's case involve situations in which the employee never had a contractual right to the benefit at issue. *Id.* at 853-55 (holding that the employer's refusal to pay severance to employees who had refused to sign a release of claims did not constitute retaliation in violation of Title VII).

a release of legal claims. The Sixth Circuit reversed the district court's grant of summary judgment in favor of the EEOC.

The Sixth Circuit reasoned that the employer's refusal to pay severance that was not otherwise due or promised to the employee after she refused to sign a release of legal claims "left [the employee] in the same position that she had been in before the offer of the [severance pay in exchange for a release of legal claims]." *Id.* at 502. "This was not a benefit given or owed to all employees . . . ." *Id.* "As such, [the employee] was not adversely affected, and on these facts the denial of severance pay was not an adverse action for the purposes of the retaliation analysis." *Id.* Indeed, "Several courts have found that declining to pay severance or settlement amounts (not otherwise due) when an employee refused to sign a waiver or release does not amount to an adverse employment action in the retaliation context." *Id.* (collecting cases)).

Similarly, in *Jackson v. Lyons Falls Pulp & Paper, Inc.*, 865 F. Supp. 87 (N.D.N.Y. 1994), a former employee contended that his former employer retaliated against him in violation of the ADEA by denying him severance pay and benefits. The court held that former employer's denial of severance pay and benefits was not an adverse action. The court reasoned that "[b]ecause plaintiff was not otherwise entitled to receive severance pay and benefits, the award of severance pay and benefits was a privilege rather than a right." *Id.* at 95. "As such, defendant's refusal to supply plaintiff with severance pay and benefits can not be characterized as an adverse action." *Id.* "Instead, defendant merely declined to enlarge plaintiff's rights to compensation." *Id.*

As in *Hottenroth*, *Sundance*, and *Jackson*, Sicher's claim involves a discretionary benefit to which he was not entitled. Sicher concedes that, upon termination, he was told that he was not entitled to a severance or a prorated bonus. Accordingly, like the denial of monetary benefits that

8

the *Hottenroth* court identified as not constituting an adverse employment action, it was wholly within Merrill Lynch's discretion to grant or rescind the settlement offer. Given the foregoing, Sicher cannot, as a matter of law, show that Merrill Lynch's rescission of its settlement offer constitutes an adverse employment action, and, as a result, cannot make out a prima facie case of retaliation under the ADEA. Accordingly, Merrill Lynch's motion for summary judgment is granted.

### IV. CONCLUSION

Merrill Lynch's motion for summary judgment is granted.

ENTER:

                                             /s/
                                     JOAN B. GOTTSCHALL
                                     United States District Judge

DATED: March 9, 2011